Good morning, Your Honors. May it please the Court, Jonathan Libby appearing on behalf of the appellant, Edgar Ramirez. I would ask to reserve two minutes for rebuttal. I do so. Your Honors, Mr. Ramirez's due process rights were violated at his 1999 removal proceeding when the immigration judge failed to inform him that he was eligible for relief from deportation through a waiver under Section 212H of the Immigration and Nationality Act. And because it was prejudiced by this defect, his motion to dismiss should have been granted. Well, now, did the immigration judge know that his parent was a resident? Well, the government has conceded that there was, in fact, evidence in the record to indicate to the immigration judge that he did, in fact, have a lawful accommodation. Well, the government may have conceded it, but I sure can't find it. Do you have the specific portion of the record in which this fact is known to the I.J.? I do not have that in front of me. Well, maybe the government can tell us. Perhaps it can. I mean, the government certainly believes that, and my recollection from reviewing the record was that he had, in fact, obtained a voluntary departure pursuant to Form I-817, which indicated that he was the unmarried child of a lawful permanent resident. Well, what is this? I think it's ER-27. There's a form, Record of Deportable Alien, and it says father's name and nationality and address, and it says Juan LPR. And then it says mother's present and native names, and it says Martha LPR. What does that mean? LPR is a lawful permanent resident. So, Your Honor, in fact, this is, in fact, a record that Mr. Ramirez was the son of lawful permanent residents. And as the son of a lawful permanent resident, he was entitled to seek relief under Section 212H. Your argument, then, is since that reference of LPR is in that particular document, that there was a duty, then, on the immigration judge? Correct. So long as there is any inference in the record before the immigration judge, the immigration judge, in fact, has a responsibility, has a duty to inform the potential deportee that he has eligibility for relief from deportation. Well, maybe we should hear from the government. If that's all there is, we ought to send it back, don't we? I believe we should send it back. I mean, we certainly have to demonstrate prejudice in order to demonstrate that the motion to dismiss should have been granted. Go ahead. Go ahead with your argument. Okay. The only real dispute, as I said, is whether or not there was, in fact, prejudice. Prejudice can be shown if Mr. Ramirez had a plausible ground for relief from deportation. Now, we do not have to show that he actually would have been granted relief by the immigration judge, only that there was a plausible ground. Now, for 212H relief, he has to show that there was extreme hardship to a family member who was a citizen or a lawful permanent resident. In this case, we have his mother, who in the letter that was submitted as part of the motion to dismiss indicated her strong ties to her son, the deep personal loss that she was suffering or would have suffered due to his deportation, because the Court needs to look at what was before the immigration judge at the time of the hearing. The mother was losing not only this son, but Mr. Ramirez's twin brother, Fernando. Mr. Ramirez had been convicted, along with his brother, for a crime. That's what precipitated the removal proceeding. In fact, Edgar Ramirez, we believe, in fact, is in fact innocent of that crime. He pled guilty as part of a package deal with his brother in order to prevent his brother from being sentenced to life imprisonment. And, in fact, in the record is a declaration from his brother's attorney, who makes that very clear, that, in fact, Edgar Ramirez only entered into this noble contenderate plea in order to keep his brother from being sentenced to life. So his mother was going to lose not just this son, but both sons, and was losing Edgar Ramirez due to a conviction and, in fact, a crime that he, in fact, did not commit. And your argument, I suppose, is that under Ninth Circuit precedent, that even though you can't predict that the I.J. would allow the hardship, at least it's a plausible argument. And that's all we need to show. And at this point, Your Honor, unless the Court – we also have an alternative ground for relief, which is that the district court here did not permit us to put on evidence to permit Mr. Ramirez's mother to, in fact, testify and expound upon what she had indicated in her letter to the Court. The Court decided that it was not going to aid it in reaching its decision as to whether or not there was prejudice. But obviously, we believe that additional testimony could have, in fact, demonstrated additional grounds for extreme hardship to the mother. So – Why don't you reserve the rest of your time? I will reserve. Thank you, Your Honor. We can agree on rebuttal. We'll hear from the government. May it please the Court, Eric Silber on behalf of the United States. I do think this case turns on the prejudice issue, but I would like to make a clarification on the issue of notice. Well, I was going to ask you, are you concerned that this is a case of prejudice?    It's a case of prejudice. Conceding that the immigration judge had record notice that this individual had LPR parents, in which case under Bowie, we have to send it back, right? Well, if this was a direct immigration appeal, it would have to be sent back without a showing of prejudice. But the defendant, because this is a 1326d challenge, has to establish prejudice. So that's where we get to the plausible grounds. But I do think it's important to recognize that I don't think there was evidence before the IJ definitively that the defendant had LPR parents. The record at ER 27, the record of deportable alien, there's no evidence that that was before the IJ. That, in fact, is an immigration form from his – Wait a minute. Either it's in the record or it's not. I don't believe that – it's in the record in the district court in this case, ER 27, but there's no indication it was before the IJ at the time – Oh, okay. All right. Where does it come from? Doesn't this come from the A file? Isn't that what it's called? It does come from his A file, but I don't believe that the A file is usually before the immigration judge. I believe it's the INS attorney that would have the A file. To give a kind of example, it wouldn't be particularly – it wouldn't be that much different than if you had, for example, a supervised release violation in district court and you had the probation office, which is part of the judiciary, that had a file on a case. Even though they're part of the judiciary, you wouldn't presume that the district court had a document from their file without it being put on the record. And here, just because there's a document that's in the immigration file that the INS has, unless it's actually put on the record, which this Court has indicated in row, then it's not before the IJ and there's no duty to advise. So I don't think – given there's no evidence that ER 27 was before the immigration judge at the time of the hearing, I don't think that the defendant can rely on that. I do think at ER 33 there's a reference at the hearing to I-817 voluntary departure. And I'll also note the transcript here is actually pretty poor. There's blank spaces in it. On the actual tape, my recollection is that it said family unity program, even though it's not listed on this transcript. And that is a particular type of voluntary departure that the IJ would have been aware of that applied only to certain legalized aliens. Now, it wasn't just LPRs. So, I mean, this wouldn't have conclusively – this reference would not have conclusively established that the defendant had LPR parents. But it – I do think it triggered the – under this Court's precedent, triggered the duty to inquire further. I mean, I think that's what was going on in Moran and Riquez when you had a reference to an IR-1 visa, which is immediate relative, which would be a United States citizen, that that triggered. We're one step removed from that whole process, and I was confused momentarily about that. So we're not in a position to send it back to the IJ. What we have to look at is whether or not that was a defect in the IJ's decision sufficient to cast doubt on its validity. That's right. I mean, this is a collateral attack on the deportation hearing in the 1326 prosecution. So, I mean, it is a more difficult challenge. I mean, I – I do think that under existing law that this was a due process violation. Obviously, the panel is bound by existing law, but we disagree with that, as we noted in our brief. We actually don't think that this should be a due process violation. But this law is a due process violation. But when you say under existing law, it is a due process violation under existing Ninth Circuit law. Because the failure to follow this – the failure to advise of this relief and make the further inquiry is itself a due process violation. I mean, we disagree with that, given the discretionary nature of this relief, and in particular, given that the defendant was only eligible for the relief. We can't disagree with Ninth Circuit law unless we were to go en banc on this issue, which we're not. I mean, we're not sitting en banc, so we have to follow it, right? I agree. I mean, I don't think that's an issue before the panel right now. That's why I think – But you're conceding that there's a due process violation here under Ninth Circuit law with respect to the – what was it? The deportation order or the – whatever that proceeding was, the IJ proceeding. Since this was after the ADPA and IRIRA, I mean, it's technically a removal proceeding, but there's not really any difference between terminology between deportation or removal. So this is confusing. So you're – so this whole case boils down to whether there was prejudice, i.e., whether there was a false or a plausible grounds for relief, that the district court didn't let him introduce evidence to show that, other than what he had filed with his motion to dismiss, quite possibly because she had found no due process violation. I respectfully disagree that he was not given a chance to provide evidence. I actually think he was given two opportunities to provide evidence and failed to do so, or failed to provide sufficient evidence. If you look at this, it's defendant's burden in a motion to dismiss the indictment to establish the plausible grounds for relief, and it was his burden with his motion to dismiss to provide all of his evidence. I mean, these motions are typically not – don't actually have evidentiary hearings because it's not up to the district court to actually make the weighing that the IJ would have made. You simply provide the evidence that would have established the plausible grounds. It either doesn't – does or doesn't. It's a legal determination. So the defendant should have submitted all the evidence he had at the time of his original motion to dismiss the indictment. He did submit some, but it was clearly deficient. He didn't submit any letter from his mother. And the letter he submitted from his girlfriend, who doesn't fall within this provision to begin with because it's only a spouse of an LPR or a United States citizen and his girlfriend was not a spouse at the time of the removal hearing in 1999. As to her, what she said was she would move to Mexico with him and that it wouldn't be particularly – I mean, she actually indicated it wouldn't be a hardship because she would be able to continue to work and go to school in the United States and they would be able to live in family – with family in Mexico. So, I mean, you don't have – this Court has recognized – The standard is plausibility. Well, but it still has to be – this is an extreme hardship waiver that's at issue here, and the focus really, as the BIA indicated in Matter of Nagai, is on the word extreme. As the Second Circuit indicated in Fernandez-Antonio, this is an exceptional remedy, and the Supreme Court indicated the same thing in Wang. Shouldn't we have let the IJ make that decision? Well, here the IJ obviously can't because there was the due process violation. There still has to be the showing of prejudice. So, in front of the district court here, he had the burden of showing just a plausible. But it still has to be a plausible ground. That is true. But in Muro-Inclan, for example, and Arce-Hernandez, this Court looked at showings in which were just the common results of deportation. In Arce-Hernandez, it was the difficulty of deporting the family's breadwinner and the difficulty in relocating, and that was just a common ground of deportation that did not establish plausible grounds. If you look at Muro-Inclan, it was clear in Muro-Inclan that it was going to be a separation between husband and wife, and that itself was not sufficient to establish plausible grounds. The defendant has to show something, plausible grounds for something that's extreme. It can't just be the common results of deportation. This is really an exceptional remedy here. And, again, this is just the threshold showing to even be eligible in the first place. The defendant, as we indicated, then has to go on and show plausible grounds that the IJ would exercise their discretion. But turning to this, I mean, the evidence before the district court, so that you have the first submittal of the evidence with the motion to submit to it, which was plainly insufficient. The government pointed that out in their response brief. Really, that should have been the only time that the defendant submitted evidence, because that's what's going on. Well, that's not really true. In the district courts, I mean, you're testifying to me about what happens in the district court, but in the district court, the judge at any time can open it for an evidentiary hearing and make a ruling and additional evidence submitted. It's certainly true that the district court can, but it is also true, given that it's the defendant's burden and that the idea of having a briefing like this is to allow the government to respond, would be for the defendant to file that information with the original motion. Here, it ultimately doesn't matter at that point, because the defendant, in fact, took an opportunity after seeing the government's response and the government's points about how the showing was deficient. The defendant submitted more evidence. It submitted a declaration from his mother that was absent, or excuse me, a letter from his mother that was absent. Yeah, but what's wrong with that? They thought they had met their burden and you came up with some other things, so they introduced additional evidence. What's wrong with that? Well, that's right. There's nothing ultimately wrong with that. I mean, the district court didn't abuse its discretion by allowing that to happen. The question the defendant raises is, after he was given that second opportunity to submit additional evidence, and then the district court, at the beginning of the hearing, gave him a tentative which said, I'm going to deny this, he asked for an opportunity to present, for the third time, additional evidence. Well, did he ask for an evidentiary hearing, or what did he ask for? Well, he asked after getting the tentative, denying it, to allow these witnesses to testify. An evidentiary hearing, a live evidentiary hearing. That's correct. Now, is the government asking for a remand for an evidentiary hearing? We don't want an evidentiary hearing in this case. We don't think there's prejudice on this record. The one point that I would note, well, actually, I guess there are two points. But I thought, my notes indicated the government already requested a remand to develop the record as to whether Ramirez's visa application was adequate. We indicated that if there was otherwise going to be a remand on prejudice, one of the most difficult thing with this, with what the defendant's seeking here, is actually that a visa be immediately available. I mean, I think it's important to step back for a moment and say that the defendant isn't actually eligible for any relief from deportation. I mean, he is barred from relief from deportation. What he's Assuming that removal order is valid. But if you're telling us that it was defective because of a due process violation, why then there's no predicate for this conviction? Well, but the due process violation involved not telling him how to essentially convert his deportation hearing into an exclusion proceedings. He was not actually Doesn't that affect the viability of the removal order? It does. It certainly does. But because of the manner in which he needs to get relief in this case, he has to actually get two different forms of relief. He has to adjust his status to that of an LPR, which is essentially what converts his hearing from a deportation proceedings into an admission proceedings. Because the relief he's seeking, 212H relief, which is the second type of relief he needs, is only something that weighs a ground for admissibility. It doesn't weigh a ground for deportation. So unless he's able to convert the proceedings, he can't – this relief doesn't aid him in any way. So you're saying that he's going to be deported in any event. The only issue is whether he serves time in the United States before he's deported. No. I'm sorry if I was – if I'm being confusing on this. He – there – in his – he was put in a deportation proceeding, which is a separate – there are two separate provisions that govern how someone can be removed from the country. There's deportation proceedings, which apply to someone who's been admitted to the United States, and there are admission proceedings, which apply to someone who hasn't been admitted to the United States. The defendant at his hearing said he had been admitted, so he was in deportation proceedings. And there is no relief to the defendant from deportation. The BIA, however, has created this legal fiction that if you apply for adjustment of status to become an LPR, you're essentially treated as if you're at the border applying for admission, and therefore, you can essentially, as long as you're not inadmissible to the United States, and now you get the other kind of – you now have the other grounds for someone not being allowed in the United States. You have the other grounds for relief, which is what he's relying on. 212H, which he's relying on, is a waiver of inadmissibility. It's not a waiver of deportation. So this is – he's using adjustment of status as a procedural mechanism to – Currently, he's got an application for adjustment of status? Well, he's saying he would have applied at the hearing if he had known about this. But it's important to recognize this is actually two different forms of relief, both of which have legal eligibility requirements, and both of which have discretionary determinations to come. Okay. But this is an appeal from a conviction in federal district court for the crime of illegal reentry. That's right. And to actually get kind of a broad way back to your question about what we were asking for on a remand, we simply point out if defendant otherwise has established prejudice on this record, we on remand intended to raise the visa issue, because actually the visa is the most difficult thing that he has to show in this case. It's the – it's a requirement to adjust his status, which is something he has to do to get this. It is actually the most difficult requirement because visas are backlogged, and it's very difficult to obtain a visa. We simply know that there's a document missing from the record that we felt uncomfortable raising it on appeal, given the document's myth. This is something that's missing from the record, meaning it's not in the ER or it was never put in the record of this criminal case. It was not put in the record of this criminal case, but it is in the defendant's immigration file. I mean, the date – his parent – the issue, I guess, to just give some background on it, is that if defendant had attempted to apply for a visa at his deportation hearing, he wouldn't have been able to do so. I mean, if that was the first time he tried to apply for a visa, again, because visas are backlogged, his preference category based on his parents is a fairly low preference category, and Mexico is a fairly backlogged country. In fact, he would have had to apply by August 1992 to have been eligible by August 1999 deportation hearing. So, I mean, if he'd applied at the hearing, he wouldn't have been eligible at all. He had, in fact – his mom had applied on his behalf before that. He still wasn't eligible, but that document is not in the record, and we were uncomfortable relying on that on appeal. So we're not asking for remedy on appeal for that. Our point is that the defendant can't establish prejudice for the 212-H, both the extreme hardship, which is a threshold showing, and then the exercise of discretion, because turning to some of the things the defendant mentioned as to his mother, I mean, I think it's important to recognize his then-girlfriend, as I mentioned, wasn't even within the act. Okay. But if we were to reverse the conviction in this case. Yes. Then what happens? He would then have to be put through new removal proceedings, I would presume, as well. I mean, he wouldn't have been. Legally deported because the proceeding was defective. So start that all over again. Exactly. But, I mean, he does have to show plausible grounds to be entitled to that, and the showing he made as to his mother. I might suggest that's a different case, a different proceeding, than what we have here. I'm not sure I understand, Your Honor. Well, our questions have taken both of us way over time, but what we need to focus on is this particular criminal appeal, without necessarily getting into what would happen in the future if the appeal is meritorious. I think that's right, and if I may, I recognize I'm over time, but if I may just speak briefly as to what the defendant said as to his mother's hardship, which I don't believe we've touched on. It certainly hasn't. It's in the record. You can make your arguments. Yeah, we're aware of that. Thank you, counsel. Let's hear from counsel for the petitioner. I have to apologize to you because I was momentarily confused that this is not an appeal from an IJ determination. This is a criminal appeal from the 1326 conviction, which puts it in a different posture. Exactly. And in light of what you've heard from the government, where do you think we are? Well, we're still left with whether or not we established prejudice, whether or not we established that there was extreme hardship to the mother. Well, before you get to prejudice, isn't there the threshold question of whether there's a defect in this particular proceeding? If, in fact, there is no predicate for the 1326 conviction, you don't get to prejudice, do you? No. You still, in terms of the analysis that this Court has set forth, is whether or not there was a defect in the proceeding that deprived the defendant of due process at the prior deportation. No, no. I'm talking about in order to be, to sustain a conviction for a 1326 violation, there has to have been a removal proceeding. Right. A legitimate. Which was valid. Correct. And an illegal reentry. Correct. Okay. I hear the government telling us that the initial removal proceeding was defective because it was a violation of due process. Correct. In which case there is no predicate for this crime. That's right. Though. But you're not arguing that. Well, no, no. We are arguing that, though, under this circuit's case law, we have to demonstrate both that there was a due process violation and that, in fact, he suffered prejudice as a result of that due process violation. And demonstration of prejudice is whether or not there was extreme hardship. And, again, I guess I disagree with the government in terms of what level of extreme  I think it has to be plausible. All right. And, you know, there's a BIA case that the government cited to in its brief in re Cervantes-Gonzalez, where the BIA has said extreme hardship is not a definable term of fixed and inflexible meaning. And the elements to establish extreme hardship are dependent upon the facts and circumstances of each case. So this Court can, in fact, look at the facts presented to determine whether or not it was extreme hardship, and it was plausible, a plausible ground. Now, the government's also then added that they believe there's a second step, that in addition to showing extreme hardship, we also have to demonstrate that it was essentially likely that the immigration judge would have exercised his discretion and then granted the relief. This circuit's case law certainly does not say that. We just merely need to demonstrate that there was a plausible ground to begin with. And we've cited to the mother's letter, and this case is much closer to this Court's case in Arellano, where extreme hardship was found due to the fact that it was a son being separated from his mother, unlike other cases where prejudice has not been found, where it was separation from a wife or children, where the Court found, well, that's a common effect of deportation, to be separated from a wife or child, and the wife or child can accompany the individual to the country where he's being deported to. That's very different from a parent who, in fact, would not be expected to relocate. And we have, in this case, the various factors that were present in Arellano. So the separation from the family, the deteriorating health, the fact that Mr. Ramirez was used essentially as the mother's interpreter, and we believe that this, in fact, has demonstrated to be a plausible ground for relief. And as a result, the conviction has to be reversed. Thank you, counsel. Thank you. The case just argued will be submitted for decision. And we will now hear argument in Concepcion v. Gonzalez.
judges: O'scannlain, Wardlaw, Lovell